**COMMONWEALTH of Pennsylvania, Appellee**

v.

**Shawn Lamar BURTON, Appellant.**

Superior Court of Pennsylvania.

Submitted Dec. 3, 2014.

Filed Aug. 25, 2015.

Shawn L. Burton, appellant, pro se.

Karen T. Edwards, Assistant District Attorney, Pittsburgh, for Commonwealth, appellee.

BEFORE: GANTMAN, P.J., FORD ELLIOTT, P.J.E., BENDER, P.J.E., PANELLA, DONOHUE, SHOGAN, MUNDY, OLSON and OTT, JJ.

OPINION BY BENDER, P.J.E.:

Shawn Lamar Burton (Appellant) appeals *pro se* from the order entered August 27, 2013, denying as untimely his petition for relief filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa. C.S. §§ 9541–9546. We conclude that the record before us is insufficient to determine whether Appellant's petition satisfies the after-discovered facts exception to the one-year time requirement of the PCRA. *See* 42 Pa.C.S. § 9545(b)(1)(ii). In so doing, we clarify the due diligence required of untimely petitioners and recognize a limited exception to the "public records"

rule, which presumes that petitioners have access to information available in the public domain. Accordingly, we vacate the PCRA court's order and remand for an evidentiary hearing.

In September 1993, a jury convicted Appellant of first-degree murder and conspiracy in connection with the strangulation death of Seth Floyd in the Allegheny County Jail. Thereafter, the court imposed the mandatory sentence of life imprisonment. Appellant's co-defendant, Melvin Goodwine, was convicted of conspiracy but acquitted of the murder charge.

Appellant timely appealed from the judgment of sentence, and this Court affirmed. *See Commonwealth v. Burton,* 455 Pa.Super. 691, 688 A.2d 1225 (1996) (unpublished memorandum). On August 15, 1997, the Pennsylvania Supreme Court denied allowance of appeal. *See Commonwealth v. Burton,* 549 Pa. 696, 700 A.2d 437 (1997). Appellant did not petition the United States Supreme Court for writ of *certiorari.*

In August 1998, Appellant filed *pro se* his first PCRA petition. Counsel was appointed but subsequently withdrew due to a disagreement with Appellant. Appellant proceeded *pro se.* Thereafter, the PCRA court dismissed his petition in April 2000. New counsel was appointed and effectuated an appeal, which was dismissed in November 2001 for failure to file a brief. However, counsel successfully sought reinstatement of Appellant's appellate rights *nunc pro tunc* and timely appealed.

On review, the PCRA court's failure to conduct an on-the-record colloquy to determine whether Appellant properly waived his right to his first PCRA counsel resulted in remand by this Court and further proceedings below not relevant to this appeal. Eventually, the PCRA court again denied Appellant's first petition in December 2005. This Court affirmed, *see Commonwealth v. Burton,* —— Pa. ——, 924 A.2d 688 (2007) (unpublished memorandum), and the Pennsylvania Supreme Court denied Appellant's petition for allowance of appeal. *See Commonwealth v. Burton,* 594 Pa. 702, 936 A.2d 39 (2007).

On May 30, 2013, Appellant purportedly received a letter from the Pennsylvania Innocence Project (dated May 23, 2013). Enclosed with the letter were copies of (1) a motion to expunge criminal record filed by co-defendant Melvin Goodwine, in July 2009, and (2) a court opinion thereafter denying the motion. In his motion to expunge, Goodwine averred that (1) he (Goodwine) killed Seth Floyd in self-defense, (2) he was advised not to use this defense at trial, and (3) as a result, an innocent man went to jail for a crime that he committed. Based upon these court records, the Innocence Project letter suggested that Appellant pursue collateral relief.

On July 11, 2013, Appellant filed *pro se* his second PCRA petition. On August 6, 2013, the PCRA court issued Pa.R.Crim.P. 907 notice of its intent to dismiss Appellant's petition without a hearing. On August 27, 2013, it dismissed the petition. Appellant responded untimely to the court's Rule 907 notice on September 9, 2013. Nevertheless, Appellant timely appealed and filed a court-ordered Pa.R.A.P. 1925(b) statement. The PCRA court issued an opinion.

In July 2014, a divided panel of this Court vacated the PCRA Court's order and remanded for an evidentiary hearing. The Commonwealth filed a timely application for reargument *en banc.* We granted the Commonwealth's application and withdrew the July panel memorandum. *See* Order, 09/08/2014.

 Appellant raises the following issues:

■ Whether the PCRA court erred in denying [Appellant's] post-conviction petition as untimely filed when [Appellant] established that his [after-discovered facts] claim[ ] [was] within the [plain language of the timeliness exception set forth at] 42 Pa.C.S.A. § 9545(b)(1)(ii) and section 9545(b)(2)?

■ Whether [Appellant] is entitled to a new trial, or remand for an evidentiary hearing based upon the personal documents of Melvin Goodwine['s] admitting that the petitioner did not participate in the crimes charged in this case, which [after-discovered fact] was provided to [Appellant] by Pennsylvania Innocence Project?

■ Whether the district attorney's [ ] failure to disclose exculpatory evidence to [Appellant] proving his innocence[ ] violates the prosecutor's obligation under the Fourteenth Amendment's Due Process Clause?

Appellant's Substitute Brief at v–vi.[1]

■ We review an order denying a collateral relief under the PCRA to determine whether evidence of record supports the findings of the PCRA court and whether its legal conclusions are free of error. *Commonwealth v. Mitchell*, ––– Pa. –––, 105 A.3d 1257, 1265 (2014). "The PCRA court's credibility determinations, when supported by the record, are binding on

this Court; however, we apply a *de novo* standard of review to the PCRA court's legal conclusions." *Id.* (quoting *Commonwealth v. Roney*, 622 Pa. 1, 79 A.3d 595, 603 (2013)).

■ In this case, the PCRA court dismissed Appellant's petition without a hearing. *See* PCRA Court Order, 08/27/2013, at 1 (citing in support Pa.R.Crim.P. 907). There is no absolute right to an evidentiary hearing. *See Commonwealth v. Springer*, 961 A.2d 1262, 1264 (Pa.Super.2008). On appeal, we examine the issues raised in light of the record "to determine whether the PCRA court erred in concluding that there were no genuine issues of material fact and in denying relief without an evidentiary hearing." *Id.*

Under the PCRA, all petitions seeking collateral relief must be filed within one year of the date the judgment of sentence becomes final. *See Bennett*, 930 A.2d at 1267; 42 Pa.C.S. § 9545(b)(1). There are three statutory exceptions:

**(b) Time for filing petition.—**

(1) Any petition under this subchapter, including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final, unless the petition alleges and the petitioner proves that:

---

1. Before the original panel assigned to this case, Appellant specifically claimed both the government interference exception, *see* 42 Pa. C.S. § 9545(b)(1)(i), and the after-discovered facts exception, *see* 42 Pa.C.S. § 9545(b)(1)(ii). Appellant's Original Brief at 10. Appellant's current argument fails to address the government interference exception. *See generally* Appellant's Substitute Brief. Thus, it appears that Appellant has abandoned this particular claim before the *en banc* panel, and we will not address it.

In his second and third issues, Appellant asserts substantive claims for collateral relief, claiming newly discovered, exculpatory evidence, improperly withheld by the district attorney's office. *See* Appellant's Substitute Brief at 4–10. In light of our disposition, and the procedural posture of this case, we do not reach these claims. *See Commonwealth v. Abu–Jamal*, 596 Pa. 219, 941 A.2d 1263, 1268 (2008) (recognizing potential congruence between a *Brady* claim and Section 9545(b)(1)(i), but noting their distinct requirements); *see also Commonwealth v. Bennett*, 593 Pa. 382, 930 A.2d 1264, 1271–72 (2007) (admonishing this Court to avoid imparting substantive requirements on the analysis of timeliness exceptions).

(i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;

(ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or

(iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

42 Pa.C.S. § 9545(b)(1)(i)–(iii). Additionally, any petition attempting to invoke one of these exceptions "shall be filed within 60 days of the date the claim could have been presented." 42 Pa.C.S. § 9545(b)(2).

Here, Appellant's judgment of sentence became final on November 13, 1997, ninety days after the Pennsylvania Supreme Court denied Appellant's petition for allowance of appeal. *See* 42 Pa.C.S. § 9545(b)(3) (providing that judgment of sentence becomes final at the conclusion of direct review or the expiration of the time for seeking the review); U.S.Sup.Ct.R. 13 (requiring the filing of a petition for writ of *certiorari* within 90 days) (effective May 1, 1997). Appellant had until November 13, 1998, to file a timely PCRA petition. Thus, his July 2013 petition was patently untimely.

Appellant acknowledges that his petition was untimely but asserts that he qualifies for the "after-discovered facts" exception to the timeliness requirement. In order to qualify, a petitioner must establish that (1) he did not know the facts upon which he based his petition, and (2) he could not have learned those facts earlier with the exercise of due diligence. *See* 42 Pa.C.S. § 9545(b)(1)(ii). According to Appellant, his reliance upon the contents of Goodwine's motion to expunge meets these requirements. We agree.

Fundamentally, at issue here is the appropriate level of diligence required of an untimely PCRA petitioner. Section (b)(1)(ii) requires "due diligence," without explanation or definition of the term. This omission poses little difficulty, however, as Pennsylvania courts have interpreted consistently the concept of due diligence in different contexts.

In 1893, for example, reviewing a financial dispute in which the plaintiff failed to collect on a note past due for seven months, the Pennsylvania Supreme Court affirmed a lower court ruling, leaving the question of due diligence to the fact finder. *Tissue v. Hanna*, 158 Pa. 384, 27 A. 1104, 1105 (1893). The Court noted the following:

A contract [of guaranty] creates only a contingent liability; and it becomes absolute only by due and unsuccessful diligence to obtain satisfaction from the principal, or by circumstances that excuse diligence.... *But every case is to be judged by its circumstances.*

*Id.* (emphasis added).

More recently, this Court evaluated the efforts of police officers attempting to locate and apprehend a criminal defendant for speedy trial purposes. *Commonwealth v. Hinton*, 269 Pa.Super. 43, 409 A.2d 54, 57 (1979). We concluded:

It seems clear that the test [for due diligence] is *not* a venture into hindsight reasoning.... The matter of availability and due diligence must be judged by what *was* done by the authorities rather than what was not done. *The standard*

*of due diligence demands only reasonable efforts.*

*Id.* (some emphasis added).

In the specific context of the PCRA, our state appellate courts have been more circumspect. Apart from citing the statutory language itself, no published decision provided an expositive statement of the diligence required to satisfy Section 9545(b)(1)(ii) until *Commonwealth v. Williams,* 35 A.3d 44 (Pa.Super.2011). In *Williams,* this Court rejected a petitioner's attempt to embed a request for DNA testing in an untimely PCRA petition and clarified that "[d]ue diligence demands that the petitioner take *reasonable steps* to protect his own interests." *Id.* at 53 (citing *Commonwealth v. Carr,* 768 A.2d 1164, 1168 (Pa.Super.2001)) (emphasis added).[2]

Thereafter, we offered further guidance in *Commonwealth v. Davis,* 86 A.3d 883 (Pa.Super.2014). In *Davis,* a jury convicted the petitioner of robbery and first-degree murder in 1972, based in part on the testimony of two witnesses. *Id.* at 885–86. Decades later, in 2008, the petitioner filed a PCRA petition, in which he claimed to have discovered facts establishing that both witnesses had testified pursuant to an undisclosed agreement with the Commonwealth and that one of the witnesses had committed perjury. *Id.* at 886. Notably, during the petitioner's trial, both witnesses had denied any such agreement. *Id.* at 885–86.

The PCRA court denied relief, holding that the petitioner's facts were publicly available in several court transcripts "via an exercise of due diligence," and therefore, did not satisfy the requirements of Section 9545(b)(1)(ii). *Id.* at 889 (quoting the PCRA court opinion). This Court disagreed. We observed that the petitioner's

efforts were triggered upon receipt of affidavits signed by one of the witnesses. *Id.* Regarding the undisclosed agreements with the Commonwealth, we reasoned as follows:

At no point during the testimony of either witness did the Commonwealth interject to clarify that a deal or leniency was offered to either[.] Therefore, [petitioner] had no reason to seek out transcripts of those witnesses' sentencing hearings in unrelated cases to look for evidence of such deals. To conclude otherwise would suggest that [petitioner] should have assumed the Commonwealth's witnesses were committing perjury, and the Commonwealth was improperly permitting them to do so. Due diligence does not require a defendant to make such unreasonable assumptions. *See Commonwealth v. Selenski,* 606 Pa. 51, 994 A.2d 1083, 1089 (2010) (defining the due diligence required by the Commonwealth in Pa. R.Crim.P. 600 issues as *"fact-specific, to be determined case-by-case; it does not require perfect vigilance and punctilious care,* but merely a showing that the Commonwealth has put forth a reasonable effort").

Instead, [petitioner's] efforts were adequately diligent under the circumstances of this case.

*Id.* at 890–91 (emphasis added).

We also addressed the petitioner's investigation into the allegedly perjured testimony. The source of this fact was limited to one of the affidavits received by the petitioner. *Id.* at 889. In it, the affiant stated that he had revealed his perjury to a trial court in an unrelated case. The transcripts from this unrelated case were

---

**2.** In *Carr,* we did not define expressly the requirements of due diligence but rather examined the facts surrounding the appellant's

efforts to pursue relief and concluded the efforts were insufficient. *See Carr,* 768 A.2d at 1168.

unavailable. *Id.* at 890. Nevertheless, the PCRA court determined that the previous, public disclosure of this perjury precluded petitioner from relying on it. *Id.* Again, we disagreed, concluding that the petitioner acted with "sufficient diligence" and holding that "[i]t would be *unreasonable* to expect a *pro se* prisoner such as [petitioner] to do that which a trial court could not [*i.e.,* locate the transcript]." *Id.* at 891 (emphasis added).

Key in *Davis* was the petitioner's receipt of an affidavit informing him that at least one of the witnesses against him had secretly secured a sentencing agreement with the Commonwealth in exchange for his testimony. The affidavit served to trigger the petitioner's investigation. This particular circumstance was significant because the facts underlying the petitioner's claim were contained in a different or unrelated case. As we concluded, absent this trigger, "[petitioner] had no reason to seek out" facts in support of a claim for collateral relief. *Id.* at 890. Of course, there were additional factors, consistently relevant to any due diligence analysis, including the timing of the availability of the new facts and petitioner's *pro se* status. *Id.* at 891.

Finally, in *Commonwealth v. Medina,* 92 A.3d 1210 (Pa.Super.2014) (*en banc*), the petitioner was convicted of murder in 1992, based on the testimony of two brothers, children at the time. *Id.* at 1213. In 2006, one of the witnesses recanted and claimed that a detective had coerced his testimony.

*Id.* at 1216–17. Based on this recantation, the petitioner sought collateral relief. Following an evidentiary hearing, the PCRA court found the testimony of the petitioner and the witness credible and concluded that the petitioner had established the after-discovered facts exception. *Id.* at 1216.[3]

On appeal, the Commonwealth argued that the petitioner's complete failure to contact the witness during the fifteen-year period following his arrest was insufficient to establish due diligence. *Id.* We disagreed:

> [The petitioner] had no way of knowing what the detective said to the Commonwealth's key child witnesses or that his threats were the reason the boys lied at trial. In addition, reasonable investigation could not have revealed it since even at the PCRA evidentiary hearing the Commonwealth's prosecutors claimed they had not known of the detective's conduct. If the Commonwealth's prosecutors did not know, [the petitioner] and his counsel had no reason to look for this evidence and probably could not have found it if they had.

*Id.* (adopting the analysis of the PCRA court). Thus, we concluded that the petitioner's efforts were *reasonable* under the circumstances. *Id.* at 1217.

■■■■ There can be no reasonable dispute that the due diligence inquiry is fact-sensitive and dependent upon the circumstances presented.[4] Moreover, although

---

3. The credibility determination of the PCRA court was essential to our subsequent affirmance. *Id.* at 1214 ("The PCRA court's credibility determinations, when supported by the record, are *binding* on this Court.") (emphasis added) (quoting *Commonwealth v. Spotz,* 610 Pa. 17, 18 A.3d 244, 259 (2011)).

4. Incidentally, Black's Law Dictionary defines due diligence in the following manner:

> Such a measure of prudence, activity, or assiduity, as is properly to be expected from, and ordinarily exercised by, a *reasonable* and prudent man under the *particular circumstances;* not measured by any absolute standard, but depending on the relative facts of the special case.

THE LAW DICTIONARY, FEATURING BLACK'S LAW DICTIONARY FREE ONLINE LEGAL DICTIONARY (2d ed.), http://thelawdictionary.org/due-diligence

the Pennsylvania Supreme Court has yet to adopt expressly the *Selenski* definition of due diligence, applied in *Davis*, in the context of the PCRA, the Court has done so implicitly. *See Commonwealth v. Edmiston*, 619 Pa. 549, 65 A.3d 339, 348 (2013) (quoting *Selenski* in the context of the appellant's argument, but ultimately rejecting a second PCRA petition as untimely, concluding that certain photographic evidence at issue was available at the time of trial). Thus, we hold that due diligence requires neither perfect vigilance nor punctilious care, but rather it requires reasonable efforts by a petitioner, based on the particular circumstances, to uncover facts that may support a claim for collateral relief. *Selenski; Medina; Davis; Williams.*

■ We shall strictly enforce this requirement. *See, e.g., Commonwealth v. Fahy*, 598 Pa. 584, 959 A.2d 312, 315 (2008). Our enforcement is a function of both the current, jurisdictional understanding of the PCRA timeliness requirement and the mandatory language of Section 9545(b)(1). *See Commonwealth v. Peterkin*, 554 Pa. 547, 722 A.2d 638, 641 (1999) (baldly asserting that the PCRA timeliness requirements are "a matter of jurisdiction"); *see also* 42 Pa.C.S. § 9545(b)(1) ("Any petition under this subchapter ... *shall be filed* within one year ...") (emphasis added).[5] Nevertheless, strict enforcement does not elevate the level of diligence required of a petitioner but merely describes the vigorous manner of judicial review.

Also relevant to our disposition is the nature of the after-discovered facts relied upon by Appellant. Appellant claims that he is innocent of murder and conspiracy, citing in support the contents of a motion to expunge criminal record filed by Appellant's co-defendant, Melvin Goodwine, in July 2009. At first glance it would appear that Appellant's claim runs afoul of Pennsylvania Supreme Court precedent holding that publicly available information cannot predicate a timeliness exception, beyond the 60–day grace period defined in Section 9545(b)(2). *See, e.g., Commonwealth v. Taylor*, 620 Pa. 429, 67 A.3d 1245, 1248 (2013) ("This Court has found matters of public record are not unknown.").[6]

However, the rule is not absolute. It must adhere to the statutory language of Section 9545. The requirement is that Section 9545(b)(1)(ii) facts are "unknown *to the petitioner.*" 42 Pa.C.S.

---

(last visited Apr. 23, 2015) (emphasis in original).

**5.** The jurisdictional interpretation of the timeliness requirement is longstanding. However, it is not without controversy. *See, e.g., Commonwealth v. Brown*, 596 Pa. 354, 943 A.2d 264, 272–73 (2008) (Baer, J., dissenting) (suggesting that this interpretation sacrifices "fundamental rights at the altar of finality"). Moreover, this Court has not always held to the "strict enforcement" standard when the jurisdiction afforded us by the PCRA is at issue. For example, it is well settled that the prisoner mailbox rule applies to PCRA petitions. *See, e.g., Commonwealth v. Chambers*, 35 A.3d 34, 39–40 (Pa.Super.2011) (applying the "prisoner mailbox rule" to a PCRA petition); *Commonwealth v. Hopfer*, 965 A.2d 270, 272 n. 2 (Pa.Super.2009) (same); *Commonwealth v. Little*, 716 A.2d 1287, 1288 (Pa.Super.1998) (same).

**6.** *See also Commonwealth v. Chester*, 586 Pa. 468, 895 A.2d 520, 523 (2006) (rejecting as untimely a counseled PCRA petition alleging trial counsel conflict of interest when counsel was arrested for driving under the influence within days of making his appearance on behalf of petitioner); *Commonwealth v. Lark*, 560 Pa. 487, 746 A.2d 585, 588 n. 4 (2000) (suggesting in *dicta* that certain statistics underpinning a study critical of the Philadelphia criminal justice system "were of public record [prior to petitioner's first, counseled PCRA petition] and cannot be said to have been 'unknown' to [the] [a]ppellant").

§ 9545(b)(1)(ii) (emphasis added). This imparts a subjective element into the due diligence standard, easily accommodated by a reasonableness analysis, but not accurately reflected by a bright line rule. An irrebuttable presumption that public information cannot be "unknown" would disregard the standard of diligence required of untimely petitioners.

The general rule is reasonable when we may conclude that the petitioner retains access to public information, such as when a petitioner is represented by counsel. *See, e.g., Taylor,* 67 A.3d at 1247 (stating that each of the petitioner's three petitions for collateral relief were prepared by counsel); *Chester,* 895 A.2d at 522 (stating that petitioner was represented by counsel during pendency of his second petition); *Commonwealth v. Whitney,* 572 Pa. 468, 817 A.2d 473, 474 (2003) (noting that petitioner had the benefit of counsel). In such cases, public records should be presumptively knowable. However, a *pro se* petitioner does not have access to information otherwise readily available to the public. That is elementary: A PCRA petitioner is most often incarcerated, and thus, no longer a member of the public. *See* 42 Pa.C.S. § 9543(a)(1). Without counsel's providing a conduit to publicly available information, a presumption of access is cynical, and the strength of the general rule falters. Thus, the Supreme Court has expressly recognized the importance of *access* to the public information.

Recall in *Bennett,* a petitioner was denied collateral relief. *Bennett,* 930 A.2d at 1266. The petitioner timely appealed, but appointed PCRA counsel failed to file a brief, and the appeal was dismissed by court order. *Id.* Thereafter, upon discovering counsel's abandonment, the petitioner *pro se* filed a second petition. *Id.* The PCRA court granted relief, reinstating the petitioner's appellate rights *nunc pro tunc.*

*Id.* at 1267. This Court quashed the petitioner's appeal, concluding that the second petition was untimely. *Id.* The Supreme Court disagreed, concluding that counsel's abandonment of the petitioner was a fact, unknown to the petitioner, despite its presence in the public record (*i.e.,* the court order dismissing the petitioner's appeal was a matter of public record). *Id.* at 1275.

Addressing the public records rule, the Supreme Court reasoned as follows:

While the dissenting opinion [advocating strict application of the public records rule] is attractive in its simplicity, it does not give due consideration to the circumstances the instant case raises. The August 14th order [dismissing the petitioner's first PCRA appeal] was a matter of "public record" only in the broadest sense. Such orders are not sent directly to the prisoner. Rather, counsel is sent the notice on the assumption that counsel will inform his client of the court's action. In a case such as the instant one, it is illogical to believe that a counsel that abandons his or her client for a requested appeal will inform his client that his case has been dismissed because of his own failures. More importantly, in light of the fact that counsel abandoned Appellant, we know of no other way in which a prisoner could access the "public record." [13] Rather, we believe this situation is sufficiently distinct from the situation in *Chester* [*see supra* ], since in this case, *the matter of "public record" does not appear to have been within Appellant's access.* [14]

---

[13] Of course, the PCRA court can examine this matter on remand.

[14] *Chester* involved a "public record" extant at the time of trial during which counsel was actively representing his client. Clearly, that is distinct

from a situation in which counsel has abandoned his client and yet counsel is the only way the client would have to access the information.

*Bennett,* 930 A.2d at 1266 (emphasis added).

 Viewing our analysis in *Davis, supra,* through the lens of *Bennett,* the contours of an "access" exception to the public records rule come into better focus. If our Supreme Court has recognized expressly that, without the benefit of counsel, we cannot presume a petitioner has access to information contained in his own public, criminal docket, then surely it cannot be that we presume a *pro se* petitioner's access to public information contained elsewhere. Thus, we hold that the presumption of access to information available in the public domain does not apply where the untimely PCRA petitioner is *pro se.*

 Applying the law in this case, and without the benefit of an evidentiary record developed below, Appellant's diligence may be sufficient. After receiving a letter from the Innocence Project, advising him of the contents of Goodwine's motion to expunge, Appellant promptly filed a PCRA petition. Similar to the affidavit significant to our ruling in *Davis,* here the letter received by Appellant triggered his claim for collateral relief.

The timing of Goodwine's motion is also important, as it occurred more than ten years after Appellant's judgment of sentence became final. The law does not require hyper-diligence, in which would-be petitioners incessantly scour the entirety of the public domain—that would be a Sisyphean task, neither realistic nor reasonable. After such an extended period, it would not be reasonable to expect Appellant to investigate public records with sufficient regularity to ascertain quickly whether Goodwine may have disclosed potentially exculpatory information concerning Appellant's case. In this regard, the contents of Goodwine's motion are informative. According to the motion, Goodwine was advised to forego a claim of self-defense at trial. Instead, he chose not to testify. Goodwine's silence at trial (and his acquittal of the murder charges) eliminated any reasonable expectation that he would, thereafter, publicly acknowledge his guilt. Thus, Appellant had no reason to seek out facts in support of a claim for collateral relief. *Medina; Davis.*

Finally, Appellant is *pro se.* Accordingly, we will not *presume* he has access to public information. Absent evidence demonstrating Appellant's access to the contents of Goodwine's criminal docket, the public records rule does not apply.[7] *Bennett; Davis.*

In its opinion, the PCRA court suggested that it was unclear when Appellant really learned of Goodwine's filings, suggesting it did not find credible Appellant's assertion that, unsolicited, the Innocence Project approached Appellant in May 2013.

---

7. We reject the learned Dissent's suggestion that we have adopted a "status-based approach" to assessing due diligence. To be clear: An untimely petitioner's *pro se* status merely eliminates the presumption of his access to public information. The Commonwealth is free, of course, to adduce evidence sufficient to establish such access. When it does, a PCRA court can engage in a real, fact-based inquiry. A finding of access may well preclude a petitioner from invoking the after-discovered facts exception to the PCRA timeliness requirement (just as the general public records rule works where the petitioner is represented by counsel).

Further, we make no assumptions regarding Appellant's access to Goodwine's criminal docket. We merely reject the PCRA court's presumption of access and, more generally, establish a framework within which Appellant's diligence may be assessed properly.

*See* PCRA Court Opinion, 11/04/2013, at 5; Commonwealth's Substituted Brief at 19 n. 14. The PCRA court cannot make a credibility finding in a vacuum. Similarly flawed is the PCRA court's suggestion that Appellant must have known previously that Goodwine murdered the victim, because Appellant was convicted also of conspiracy. *See* PCRA Court Opinion at 4–5. The court's reasoning is not persuasive in light of Appellant's claim of innocence regarding both murder and conspiracy. Without a factual record developed by the PCRA court, it is impossible to conclude whether Appellant previously knew such facts. Thus, these findings were premature. Nevertheless, the PCRA court may consider these issues further following an evidentiary hearing. *See, e.g., Bennett,* 930 A.2d at 1275 n. 13 (noting that the PCRA court is free to examine questions that may arise in the context of a due diligence inquiry).[8]

For the above reasons, we conclude that the PCRA court erred in rejecting Appellant's untimely petition pursuant to the public records rule. Moreover, based on the record before us, the Goodwine motion raises genuine issues of material fact that warrant development. *See Springer,* 961 A.2d at 1264. ·Accordingly, the order of the PCRA court is vacated, and this matter is remanded for an evidentiary hearing.

Order vacated. Case remanded. Jurisdiction relinquished.

Judges FORD ELLIOTT, P.J.E., PANELLA, J., DONOHUE, J., MUNDY, J. and OTT, J. join this Opinion.

Judge OLSON files a dissenting opinion in which GANTMAN, P.J. and SHOGAN, J. join.

DISSENTING OPINION BY OLSON, J.:

I respectfully dissent. The learned Majority holds that the trial court's order denying collateral relief must be vacated and that this case should be remanded for an evidentiary hearing on whether Appellant properly invoked the newly-discovered facts exception to the one-year time bar under the Post–Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541–9546.[1] To

---

**8.** Generally, we observe that the PCRA court's timeliness analysis of Appellant's after-discovered facts exception is erroneous to the extent the court also conducted a merits analysis. *See* PCRA Court Opinion at 3–5; *Bennett,* 930 A.2d at 1270–72.

**1.** The Majority concludes that Appellant properly invoked the newly-discovered facts exception and foregoes consideration of Appellant's alternate claim that he validly asserted the governmental interference exception. *See* Majority Opinion at 1067, n. 1. As I believe that Appellant failed to plead and prove that the newly-discovered facts exception applies, I would address Appellant's government interference claim and hold that it is meritless. Appellant's governmental interference claim asserts that the contents of Melvin Goodwine's expungement motion constitutes exculpatory evidence that the Commonwealth improperly withheld from him in violation of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct.

1194, 10 L.Ed.2d 215 (1963). Appellant, however, does not contend that the Commonwealth had exclusive control over the information found in Goodwine's motion papers or that the Commonwealth denied him access to this information until recently. Moreover, since Goodwine filed his motion with the Allegheny County Department of Court Records, it was equally available to Appellant and the Commonwealth once it entered the public domain. Consequently, Appellant cannot establish that interference by governmental officials frustrated any previous effort to assert a claim for collateral relief. *See Commonwealth v. Abu–Jamal,* 596 Pa. 219, 941 A.2d 1263, 1268 (2008) (although *Brady* violation may fall within governmental interference exception, petitioner still must plead and prove that his failure to previously raise the claim was the result of interference by government officials); *Commonwealth v. Chester,* 586 Pa. 468, 895 A.2d 520, 523–524 (2006). Because, in my view, Appellant's petition is untimely

reach this result, the Majority holds that all *pro se* petitioners are exempt from the "public records" rule, which presumes that a petition invoking the newly-discovered facts exception to the PCRA's one-year time bar must be filed within 60 days of the date that the information entered the public domain. This reinterpretation of our Supreme Court's long-standing public information doctrine is unwarranted. The Majority's subjective, status-based approach to assessing due diligence wrongly classifies petitioners, like Appellant, according to who they are, while at the same time fails to consider what they do to acquire supposedly new facts. In addition, the Majority's new approach improperly shifts the burdens of pleading and proof on collateral review to the Commonwealth, without interpretive guidance as to how any recently recognized "subjective considerations" factor into the due diligence inquiry. Lastly, as I shall explain below, the circumstances of this case were more than sufficient to trigger an investigation by Appellant. Thus, I believe that the Majority's broad, unprecedented, and unworkable exception to settled Supreme Court precedent constitutes a sharp and improper departure from settled law. For each of these reasons, I would affirm the denial of collateral relief in this case since I believe that prevailing Pennsylvania precedent firmly supports the PCRA court's dismissal order.

I begin with a review of the PCRA court's determinations and the undisputed legal principles that govern this case. The PCRA court rejected the claim that the contents of Goodwine's motion were unknown to Appellant. *See* PCRA Court Opinion, 11/4/13, at 5. In addition, the court rejected Appellant's argument that his May 2013 receipt of the Pennsylvania Innocence Project's letter triggered the 60–day period referenced in § 9545(b)(2). *Id.* Instead, the court concluded that the 2009 filing of Goodwine's motion, and its concomitant entry into the public domain, triggered § 9545(b)(2)'s 60–day period governing the time within which a petition invoking a timeliness exception must be submitted. *See id.* ("Given the specific facts and circumstances of this case, there is no reasonable argument that the purported exculpatory evidence contained in Goodwine's [m]otion could not have been discovered at least by 2009 if not earlier."). The Commonwealth defends this conclusion, pointing out that facts which are a matter of public record may not be considered "unknown" for purposes of the newly-discovered facts exception to the PCRA's time-bar. *See* Commonwealth's Brief at 15 and 21. In my view, the PCRA court's legal conclusions, and the Commonwealth's position on appeal, find ample support within our appellate case law.

To succeed in pleading and proving a timeliness exception under § 9545(b)(1)(ii),[2] Appellant must demon-

---

and no exception applies, I conclude that the PCRA court correctly declined to review the substantive merit of Appellant's collateral claims.

2. Because Appellant's petition is manifestly untimely, it is subject to dismissal unless Appellant pleads and proves one of the following three statutory exceptions:

(i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;

(ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or

(iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

strate that "the facts upon which [his] claim is predicated were **unknown** to [him] and could not have been ascertained by the **exercise of due diligence.**" 42 Pa.C.S.A. § 9545(b)(1)(ii) (emphasis added). "**Due diligence demands that the petitioner take reasonable steps to protect his own interests. A petitioner must explain why he could not have learned of the new fact(s) earlier with the exercise of due diligence.** This rule is strictly enforced." *Commonwealth v. Williams*, 35 A.3d 44, 53 (Pa.Super.2011) (citations omitted) (emphasis added), *appeal denied*, 616 Pa. 467, 50 A.3d 121 (2012). Moreover, a petitioner seeking to invoke an exception set forth in 42 Pa. C.S.A. § 9545(b)(1) must file his petition within 60 days of the date that the claim could have been presented. 42 Pa.C.S.A. § 9545(b)(2). "[T]he 60–day rule requires a petitioner to plead and prove that the information on which he relies could not have been obtained earlier, despite the exercise of due diligence." *Commonwealth v. Williams*, —— Pa. ——, 105 A.3d 1234, 1239–1240 (2014). Because the PCRA's jurisdictional time limits go to a court's competency to adjudicate a controversy, the statute "confers no authority upon [courts] to fashion *ad hoc* equitable exceptions to the PCRA time-bar in addition to those exceptions expressly delineated in the Act." *Commonwealth v. Hackett*, 598 Pa. 350, 956 A.2d 978, 983–984 (2008).

Where a petitioner relies on public information to establish the newly-discovered facts exception found in § 9545(b)(1)(ii), appellate courts within this Commonwealth have repeatedly and consistently held that he must file his petition within 60 days from the emergence of a "fact" into the public domain. *Commonwealth v.*

*Taylor*, 620 Pa. 429, 67 A.3d 1245, 1249 (2013) (information reflecting potential conflict of interest on the part of defense counsel was on file with clerk of courts ten years before defendant was convicted and 27 years before relevant PCRA petition was filed; therefore, information was publicly available and newly-discovered facts exception did not apply); *Commonwealth v. Lopez*, 616 Pa. 570, 51 A.3d 195, 198 (2012) (*per curiam*) (information related to defense counsel's disciplinary issues was publicly available seven years before defendant's trial and 23 years before second PCRA petition; thus, newly-discovered facts exception did not apply); *Chester*, 895 A.2d at 523 (trial counsel's arrest for driving under the influence was a matter of public record ten years before defendant's second petition and, therefore, not "unknown" for purposes of newly-discovered facts exception); *Commonwealth v. Feliciano*, 69 A.3d 1270, 1278 (Pa.Super.2013) (noting, by way of alternate holding, that information relating to suspension of trial counsel's license to practice law did not constitute a newly-discovered fact since information was publicly available 11 years before defendant filed PCRA petition).

This line of cases establishes beyond doubt that "matters of public record [such as docketed trial court filings] **are not unknown**" and thus "[do] not meet the requirement [that] the information be unknown at the time the petition was filed" for purposes of the newly-discovered facts exception. *See e.g. Taylor*, 67 A.3d at 1248–1249 (emphasis added). Thus, where public information is cited as the basis for invoking § 9545(b)(1)(ii), our Supreme Court's objective interpretation of the newly-discovered facts exception leaves no

42 Pa.C.S.A. § 9545(b)(1)(i)–(iii). Additionally, any petition invoking an exception provided in 42 Pa.C.S. § 9545(b)(1) must be filed

within 60 days of the date that the claim could have been presented. 42 Pa.C.S.A. § 9545(b)(2).

room for concepts of relaxed vigilance or diminished diligence, even if long periods have elapsed between public disclosure and conviction, direct appeal, or a petition for collateral relief. Indeed, because a PCRA petitioner carries the burden to plead and prove that a timeliness exception applies, a fair reading of the case law clearly requires a petitioner to comb, regularly and routinely, through public sources in order to locate potentially exculpatory materials and come forward with a detailed explanation as to why an untimely request for collateral relief should be addressed. *See Williams*, 35 A.3d at 53 (espousing strict enforcement of the petitioner's duty to employ due diligence to protect his interests and requiring explanation as to why new facts could not have been uncovered earlier).[3]

The undisputed facts in this case lead inexorably to the conclusion that Appellant failed to invoke the newly-discovered facts exception. Goodwine filed his expungement motion with the Allegheny County Department of Court Records in 2009. Four years passed before Appellant filed the instant PCRA petition on July 11, 2013. Appellant nowhere specifies what steps he took to uncover any newly-discovered facts. Hence, Appellant's failure to file his petition within 60 days of the date that the alleged exculpatory material entered the public sphere defeats his attempt to invoke the exception found at § 9545(b)(1)(ii).

The Majority does not, and cannot, dispute these uncontested facts. Indeed, the Majority acknowledges that Appellant's claim appears to conflict with traditional applications of the Supreme Court's public records rule. *See* Majority Opinion at 1071. Instead of applying well-settled precedent, however, the Majority formulates an exception for *pro se* petitioners that threatens to swallow this deeply rooted principle. To invoke the exception found at § 9545(b)(1)(ii), the Majority first points out that due diligence "is fact-sensitive and dependent upon the circumstances." Majority Opinion at 1070. The Majority reasons that, in assessing Appellant's diligence, we must consider several factors, including the passage of time between the finality of Appellant's judgment of sentence and the filing of Goodwine's motion, Appellant's incarcerated and *pro se* status, and the contention that Appellant had no reason to initiate a search for exculpatory evidence. In the Majority's view, *pro se* petitioners occupy a special position and are now exempt **in all cases**

---

**3.** The Majority's opinion attempts to sidestep this binding precedent by suggesting that "th[is] rule is not absolute" and that "[i]t must adhere to the statutory language of Section 9545[, which requires that the facts be] 'unknown *to the petitioner*.'" Majority Opinion at 1071 (emphasis in original), *quoting* 42 Pa.C.S.A. § 9545(b)(1)(ii). The suggestion that our Supreme Court's unambiguous declarations somehow excluded PCRA petitioners does not withstand scrutiny. As even the learned Majority acknowledges, *Taylor* squarely held that "matters of public record are not unknown." Majority Opinion at 1071, *quoting Taylor*, 67 A.3d at 1248. I submit that this clear and unequivocal holding means that public records are not unknown to anyone, particularly PCRA petition-

ers (*pro se* and represented alike). To whom, apart from PCRA petitioners such as Appellant, could the Supreme Court have been referring in formulating this rule? Rather than applying the established rule in this case, the Majority carves out an exception for *pro se* petitioners in all cases going forward, reasoning that a subjective component is part and parcel of the standard of diligence. Nevertheless, the "subjective element" that the Majority injects into our due diligence inquiry, which it amorphously describes as "easily accommodated by a reasonableness analysis, but not accurately reflected by a bright line rule" (Majority Opinion at 1072), represents a clear departure from settled PCRA jurisprudence that has consistently espoused objective criteria when interpreting § 9545(b)(1)(ii).

from our Supreme Court's public records rule since they "do[ ] not have access to information otherwise available to the public" and lack the connection to public documents that retained or appointed counsel could provide. *Id.* at 1071. The Majority concludes that, because *pro se* prisoners are no longer members of the public, "the presumption of access to information in the public domain does not apply where the untimely PCRA petitioner is *pro se*." *Id.* at 1073. Applying this newly-minted standard, the Majority finds that Appellant may have exercised due diligence. *Id.* at 1073.

For several reasons, I am unable to agree with this approach. As a preliminary matter, under Pennsylvania Rule of Criminal Procedure 907, the PCRA court has the discretion to dismiss a petition without a hearing when the court is satisfied "that there are no genuine issues concerning any material fact, the defendant is not entitled to post-conviction collateral relief, and no legitimate purpose would be served by any further proceedings." Pa. R.Crim.P. 907(1). To obtain reversal of a PCRA court's decision to dismiss a petition without a hearing, an appellant must show that he raised a genuine issue of fact which, if resolved in his favor, would have entitled him to relief, or that the court otherwise abused its discretion in denying a hearing. *Commonwealth v. Paddy,* 609 Pa. 272, 15 A.3d 431, 442–443 (2011).

The law is clear that "[t]he timeliness exception set forth in [§ ] 9545(b)(1)(ii) requires a petitioner to demonstrate he did not know the facts upon which he based his petition and could not have learned those facts earlier by the exercise of due diligence." *Commonwealth v. Brown,* 111 A.3d 171, 176 (Pa.Super.2015). We strictly enforce the principle that "[a] petitioner must explain why he could not have learned the new fact(s) earlier with the

exercise of due diligence." *Id.* Here, apart from receiving the letter from the Pennsylvania Innocence Project, Appellant has not alleged any steps he took to uncover Goodwine's expungement motion. As such, Appellant **never** explained why he could not have previously discovered the new facts with the exercise of due diligence. Accordingly, Appellant failed to raise a genuine issue of fact that would entitle him to a hearing and his petition was subject to summary denial.

In vacating the PCRA court's dismissal order, the Majority effectively jettisons the requirement to plead and prove a diligent inquiry, insofar as the rule applies to *pro se* petitioners. Although the Majority declares its preference for a comprehensive and fact-specific approach to assessing due diligence, the Majority confines its analysis to a status-based examination. In other words, the Majority exempts Appellant from the public records doctrine based solely upon his *pro se* status, not what he did to uncover any allegedly unknown facts. Appellant's incarcerated and *pro se* status by itself, however, offers no probative assessment of Appellant's effort to discover the "new" information on which he now relies. Indeed, Appellant's incarcerated and *pro se* status hardly distinguishes the present case from any other in which an untimely petition asserts a timeliness exception. Nearly every petitioner who invokes the exception found at § 9545(b)(1)(ii) in order to litigate an untimely petition will be incarcerated. This is because serving a sentence is a prerequisite for eligibility for collateral relief. 42 Pa.C.S.A. § 9543(a)(1)(i). In addition, an overwhelming number of such petitioners will also be acting *pro se* since they are no longer eligible for appointed counsel. *See* Pa.R.Crim.P. 904(c) and cmt. Hence, the factors cited by the Majority do not meaningfully distinguish the present case from any other in which the newly-discovered

facts exception is invoked, much less counter the undisputed conclusion that Appellant did **nothing** for four years while Goodwine's motion lingered in the public domain. It is difficult to conceive of a petition more deficient in pleading due diligence than the one filed in this case. Therefore, going forward, there is every reason to believe that all *pro se* petitioners who invoke the after-discovered facts exception based on public information will be entitled to a hearing on their claims since comprehensive fact-finding, tailored to suit the *pro se* petitioner's particular circumstances, is now required.

Second, the basis of the Majority's blanket conclusion that all *pro se* petitioners lack access to public records rests on unsubstantiated assumptions.[4] Although the Majority criticizes the PCRA court for making determinations in a vacuum, the Majority's due diligence analysis is similarly flawed. The Majority observes that while "public records [are] presumptively knowable," this assumption does not hold for *pro se* petitioners who are often incarcerated because they are no longer members of the public. Majority Opinion at 1072. Here, the Majority infers, without support, that all *pro se* prisoners are entirely isolated and have no access to publicly available information. But, the Majority makes **no** effort to ascertain what

resources, contacts, and capabilities are available to Appellant, or others who are similarly situated, to discover public information such as the contents of Goodwine's expungement motion. Incarcerated individuals (whether *pro se* or represented by counsel) reside in prisons, not off-the-grid islands. Prisons within this Commonwealth have law libraries, computer terminals, internet access, and legal aid assistance. It is unsurprising, then, that in the closely related context of petitions that invoke newly-recognized constitutional rights under § 9545(b)(1)(iii), this Court routinely denies relief to *pro se*, incarcerated petitioners where, among other things, they fail to file their petitions within 60 days of the date a court decision enters the public domain. *See Commonwealth v. Brandon,* 51 A.3d 231, 235 (Pa.Super.2012) (*pro se* prisoner who had served more than two decades toward life sentence was not entitled to relief under § 9545(b)(1)(iii) because "the [60–]day period [began] to run upon the date of the underlying judicial decision" and prisoner filed PCRA petition more than 120 days after decision was filed); *Commonwealth v. Boyd,* 923 A.2d 513, 517 (Pa.Super.2007) (same), *appeal denied,* 593 Pa. 754, 932 A.2d 74 (2007); *Commonwealth v. Baldwin,* 789 A.2d 728, 731 (Pa.Super.2001) (same), *appeal denied,* 581 Pa. 669, 863 A.2d 1141 (2004).[5] The

---

4. While the Majority declares that, "[it] make[s] no assumptions regarding Appellant's access to Goodwine's criminal docket," Majority Opinion at 1073, the text of its opinion is replete with examples that suggest the Majority's reservations about the access of *pro se* petitioners to public information. *See e.g. id.* at 1072 ("a *pro se* petitioner does not have access to information otherwise readily available to the public;" "A PCRA petitioner is most often incarcerated, and thus, no longer a member of the public."). Indeed, it is these unsubstantiated assumptions that lead the Majority to reject clear Supreme Court precedent and shift the burdens of pleading and

proof in all future PCRA cases in which *pro se* petitioners cite public information as the basis for invoking the timeliness exception set forth at § 9545(b)(1)(ii).

5. I realize, of course, that legal decisions are not facts and that § 9545(b)(1)(ii) is distinct from § 9545(b)(1)(iii). Nevertheless, the fact that our Supreme Court has denied further review in this line of cases at least tacitly suggests that it is disinclined to formulate a special accessed-based accommodation for *pro se* petitioners in cases invoking timeliness exceptions under the PCRA, as the Majority has done in the instant matter.

release of a newly-recognized constitutional right into the public domain is at least as sporadic and unpredictable as the emergence of newly-discovered facts into the public sphere. In the former context, however, this Court consistently requires that a *pro se* petition be filed within 60 days of the filing date of the decision. The Majority's decision relieves *pro se* petitioners from this settled obligation in the context of § 9545(b)(2)(ii), even though Appellant never alleged that the lack of access to public records frustrated any investigative effort he undertook.

Third, the Majority's approach creates different classes of petitioners without fact-based justification. In this case, the Majority exempts all *pro se* petitioners from our Supreme Court's firmly rooted public records rule. This approach favors *pro se* petitioners over other members of the potential PCRA petitioner class without a rational basis. On its face, the Majority's rule incentivizes petitioners to forego the retention of counsel, even if it is within their means. Moreover, prospective petitioners who are represented by counsel, whether incarcerated or on parole or probation, are not entitled to the benefit of the Majority's rule, even if public information may be challenging for them to obtain. Neither § 9545(b)(1)(ii) nor any decisional law, until now, expressly condition favorable treatment on a petitioner's *pro se* status in the manor endorsed by the Majority. I do not think it wise to embark on such a course. *See Commonwealth v. Watts*, 611 Pa. 80, 23 A.3d 980, 983 (2011) (PCRA "confers no authority upon this Court to fashion *ad hoc* equitable exceptions to the PCRA time-bar[.]"). Instead, I would follow an approach that considers whether, consistent with settled precedent, a petition pleads and proves due diligence or explains why new facts could not have been uncovered with the exercise of due diligence, as the PCRA contemplates.

In part, the Majority rationalizes the adoption of its new rule by asserting that the Commonwealth is free to come forward with proof that Appellant possessed access to public records such as Goodwine's expungement motion. Majority Opinion at 1073 ("Absent evidence demonstrating Appellant's access to the contents of Goodwine's criminal docket, the public records rule does not apply.") and n. 7 ("The Commonwealth is free, of course, to adduce evidence sufficient to establish [access to public records]. When it does, a PCRA court can engage in a real, fact-based inquiry. A finding of access may well preclude a petitioner from invoking the [newly]-discovered facts exception to the PCRA timeliness requirement (just as the general public records rule works where the petitioner is represented by counsel)."). I do not believe that this answers the questions relating to due diligence raised by this appeal. In truth, the Majority's reallocation of the burden of proof in PCRA cases is a poor compromise for its election to relax the diligence expected of a *pro se* petitioner who seeks relief years after the deadline for filing a petition has passed.

The law is settled that a PCRA petitioner (*pro se* or counseled) always carries the burden of pleading and proving that he exercised diligence to uncover the new information on which he relies. Without qualification, our Supreme Court has made this point unmistakably clear: "We have **repeatedly** stated it is the [petitioner's] burden to allege and prove that one of the timeliness exceptions applies." *Commonwealth v. Edmiston*, 619 Pa. 549, 65 A.3d 339, 346 (2013) (citation omitted) (emphasis added), *cert. denied, Edmiston v. Pennsylvania*, —— U.S. ——, 134 S.Ct. 639, 187 L.Ed.2d 423 (2013); *Williams*, 105 A.3d at 1240; *Commonwealth v. Hawkins*, 598 Pa. 85, 953 A.2d 1248, 1253 (2008); *Brown*, 111 A.3d at 176. If Appel-

lant is to be awarded a hearing to determine whether the contents of Goodwine's motion were undiscoverable despite the exercise of due diligence, then it is his burden to allege circumstances that raise a genuine issue regarding that assessment, for that is what it means to shoulder a burden under the PCRA. *Edmiston, supra.* It is not the function of this Court to rewrite the law in an effort to salvage a legally defective petition. *See Watts, supra* at 987. Since his petition demonstrated conclusively that he took no action for four years to discover publicly available information generated by Goodwine, it is obvious that Appellant failed to discharge his burden under the legal standards that prevailed at the time of filing.

Not only does the Majority impermissibly reallocate the burdens of pleading and proof in PCRA cases, it does so without offering interpretive guidance as to how subjective elements factor into the due diligence inquiry. The Majority allows the Commonwealth to adduce evidence to establish a *pro se* petitioner's access to public information, but does not explain precisely what the Commonwealth must demonstrate in order to satisfy its new burden. For example, to establish sufficient access to public information, must the Commonwealth prove 60 continuous days of access to an open prison library, an available prison legal aide, a working computer system, and a serviceable internet connection capable of accessing public court dockets? If so, must the Commonwealth also prove that these resources were available at times when the petitioner was not in the infirmary or when the prison was not on lock down? How far into the past will the Commonwealth's new obligation extend? Here, the Com-

monwealth will have to prove access to public information for a specific petitioner at a specific facility[6] extending approximately five years into the past. In future cases, will the Commonwealth need to prove access as far as 10 or 15 years into the past? The *pro se* exception adopted by the Majority is not limited to recently-disclosed public information; hence, the scope and contours of this new duty imposed upon the Commonwealth under the Majority's ruling is entirely undefined and potentially quite onerous. The difficulties in implementing such a potentially far-reaching duty militate strongly in favor of continuing to follow our Supreme Court's objective approach to interpreting § 9545(b)(1)(ii).

Finally, the Majority's suggestion that Appellant had "no reason" to initiate an inquiry is unavailing. In support of its determination that nothing compelled Appellant to investigate exculpatory facts generated by Goodwine, the Majority relies heavily on the timing and contents of Goodwine's motion. *See* Majority Opinion at 1073–74. In particular, the Majority notes that Goodwine filed his motion more than ten years after Appellant's judgment of sentence became final. *Id.* at 1074. After such an extended period, the Majority finds it neither "realistic nor reasonable" to expect Appellant to continue to search public records to ascertain whether Goodwine may have disclosed potentially exculpatory information regarding Appellant's convictions. *Id.* The Majority also cites the contents of Goodwine's motion, which alleged that Goodwine was advised to forego a self-defense claim at trial and that he instead chose not to testify. Relying on these allegations, the Majority concludes that "Goodwine's silence at trial

---

6. Of course, proving access to public information for petitioners who have been transferred during their time in prison or who have relocated while on parole or probation will present challenges that are more complicated for the Commonwealth.

(and his acquittal of the murder charges) eliminated any reasonable expectation [on the part of Appellant] that [Goodwine] would, thereafter, publicly acknowledge his guilt." Majority Opinion at 1073. Ultimately, the Majority concludes that Appellant had "no reason to seek out facts in support of a claim for collateral relief." *Id.*

The Majority also finds fault with the PCRA court's assessments relating to the factors that could have triggered Appellant's investigation of exculpatory facts. First, the Majority criticizes the PCRA court's refusal to credit Appellant's claim that the Pennsylvania Innocence Project approached him in May 2013 without solicitation. *Id.* The Majority asserts that the PCRA court overstepped the bounds of its discretion by "mak[ing] a credibility finding in a vacuum." *Id.* The Majority also rejects the PCRA court's determination that Appellant must have known previously that Goodwine murdered Seth Floyd because the jury convicted both men of conspiracy. *Id.* Here, the Majority rejects the PCRA court's conclusions in light of Appellant's claims of innocence and the absence of a fully developed factual record. *Id.*

Based upon my own extensive review of the certified record in this case, I find no error or abuse of discretion in the PCRA court's determinations. Furthermore, as I shall detail below, I find an ample basis on which to conclude that Appellant had every reason to be particularly vigilant of Goodwine's criminal record filings since there was no more likely source of exculpatory information.

The record reveals that the **PCRA court presided over Appellant's and Goodwine's joint jury trial,** which commenced on September 21, 1993. At trial, a number of witnesses testified as to their knowledge of Floyd's murder, including medical experts, Allegheny County Correctional Officers, and several inmates at the jail. Correctional Officer Gary Fluman testified that on March 9, 1993, at approximately 12:15 p.m., an inmate summoned him to a cell in the Allegheny County Jail. N.T., 9/22/93, at 254. Upon arriving at the cell, Officer Fluman observed a body covered by a mattress and bedding. *Id.* at 255. Officer Fluman removed the bedding and mattress and discovered Floyd's body tied by the throat with a ligature that was attached to a chain that held the bed to the wall.[7] *Id.* The officer did not detect a pulse. *Id.*

Dr. Leon Rozin, a forensic pathologist with the Allegheny County Coroner's Office, testified regarding his findings following an autopsy on Floyd's body. In addition to minor injuries, Dr. Rozin observed signs showing the use of a ligature on Floyd, including embedded markings on the victim's neck. N.T., 9/24/93, at 694–703. Based upon his examination, Dr. Rozin concluded that Floyd died as a result of asphyxiation that could have resulted from the ligatures placed around Floyd's neck. *Id.* at 701–702. Dr. Rozin also opined that it would have taken between three to five minutes to kill the victim through strangulation but that he would have lost consciousness after the first or second minute. *Id.* at 703.

Micah Goodman was among the inmates who testified that he saw Appellant, Good-

7. Detective Gary Tallent testified that he processed evidence recovered from Floyd's jail cell. N.T., 9/21/93, at 374–375. In particular, Detective Tallent recovered a ligature device fashioned from a torn bed sheet and strands from a mop. *Id.* at 376–377. Detective Tallent also recovered a second ligature device made from a pink and white shoelace, which had been placed around Floyd's neck. *Id.* at 377. Detective Tallent noted that Floyd had a black athletic shoe on his left foot and that the matching right shoe was located on the floor of Floyd's cell. *Id.* There were no shoelaces in the black athletic shoes. *Id.*

wine, and Floyd engaged in what he thought was wrestling in Floyd's cell on the day of the murder. N.T., 9/23/93, at 492. Appellant and Goodwine were standing behind Floyd pushing him on his bed and holding him down, while Floyd appeared to be trying to free himself. *Id.* at 493–494. Approximately ten to 15 minutes later, Goodman observed Appellant and Goodwine running down the steps in the jail. *Id.* at 501. A second inmate, Marvin Flarper, confirmed Goodman's testimony. He testified that as he walked past Floyd's cell, he heard scuffling inside and saw two men, whom he identified at trial as Appellant and Goodwine, struggling with a third man on a bed. *Id.* Edwin Wright, a third inmate, identified Appellant and Goodwine as being in Floyd's cell around lunchtime on the day of the murder. *Id.* at 449–450. Inmate Gregory McKinney testified that Appellant admitted that he choked and suffocated Floyd with a plastic bag and then tied him to his bunk bed to make it appear as though he had committed suicide. *Id.* at 619; N.T., 9/24/93, at 628. Inmate Warren Parrott testified that, ten to 14 days before Floyd's murder, he overheard Appellant talking with Goodwine about deferring a transfer so that they could get together and "fix" a situation that had arisen with an individual from California, referring to Floyd. N.T., 9/23/93, at 528–546. Parrott understood this conversation between Appellant and Goodwine as a plan to kill Floyd. *Id.* at 546. In addition, inmate William Johnson described Appellant and Goodwine as "partners" who were in each other's company "all the time." *Id.* at 600.

Based on the foregoing testimony from the certified record in this appeal, I am unable to agree with the Majority's determination that the PCRA court overstepped the bounds of its discretion by making credibility assessments in a vacuum or by prematurely reaching factual conclusions in the absence of a fully developed record.

This Court acknowledges that, "[g]enerally, it is deemed preferable for the same judge who presided at trial to preside over the post-conviction proceedings since familiarity with the case will likely assist the proper administration of justice." *Commonwealth v. Martorano*, 89 A.3d 301, 307 (Pa.Super.2014). Here, the PCRA court presided over the joint trial of Appellant and Goodwine and had the opportunity to hear the testimony of the Commonwealth's 19 witnesses, including medical experts, investigating detectives, jail guards, inmates, and others. This evidence, transcribed in over 1000 pages of trial testimony, overwhelmingly established Appellant's direct participation in Floyd's ligature strangulation, as well his involvement in a criminal conspiracy to commit murder with Goodwine. The definitive proof of Appellant's guilt, of which the PCRA court was undoubtedly aware, warranted the court's skepticism toward Appellant's professed lack of knowledge about the timing and content of Goodwine's criminal filing. In the face of such an abundant record, I cannot fault the PCRA court for using its extensive knowledge and familiarity with the facts in this matter in reaching a result that fully complied with prevailing law.

In addition, based upon the extensive trial testimony that linked Appellant and Goodwine, I also believe that our recent decisions, on which the Majority heavily relies, do not support the conclusion that Appellant is entitled to the benefit of a sweeping *per se* rule which holds that he is entitled to relief based solely upon his *pro se* status. The Majority cites our decisions in *Commonwealth v. Medina*, 92 A.3d 1210, 1216 (Pa.Super.2014) (*en banc*), *appeal granted*, —— Pa. ——, 105 A.3d 658 (2014) and *Commonwealth v. Davis*, 86 A.3d 883 (Pa.Super.2014). These cases, however, are factually distinguishable.

In *Medina*, this Court held that a petitioner, who relied on the personal recanta-

tion of trial testimony by a witness for the Commonwealth, met the newly-discovered facts exception. Central to our conclusion was the fact that the petitioner first learned of the witness' recantation on or after October 18, 2006 when the witness transferred to the same prison facility that housed the petitioner and informed him of police coercion. *Medina,* 92 A.3d at 1217–1218. There was no other source for the recantation evidence and the petitioner had no reason to look for it. *Id.* The record also confirmed that the petitioner filed his petition on December 5, 2006, within 60 days of the date he initially learned of the witness' recantation. *Id.*

Unlike the petitioner in *Medina,* Appellant here relied on a public court filing by his co-defendant Goodwine to establish an exception to the PCRA's time bar. In contrast to the Commonwealth witness at issue in *Medina,* whose coercion at the hands of police was unknown and unknowable, Appellant here was well aware of his co-defendant's involvement in the case at the time the murder occurred. Moreover, contrary to the Majority's conclusion, I believe that Goodwine's acquittal gave him license to make exculpatory disclosures without risk of criminal prosecution.[8] Combining Appellant's awareness of this fact with the precise factual posture of this case, Goodwine was the most, if not the sole, promising source of exculpatory evidence supportive of Appellant's innocence claim. This considerably narrowed the scope of Appellant's information search from "the entirety of the public domain" to the criminal docket filings of his former criminal confederate, Goodwine. Since

Appellant had every reason to monitor Goodwine's court filings from the moment of conviction in 1993, *Medina* is distinguishable and does not mandate relief.

*Davis,* too, is inapposite. In *Davis,* a panel of this Court held that a petitioner properly invoked timeliness exceptions found at §§ 9454(b)(1)(i) and (ii) where he acted diligently under the circumstances and "filed his *pro se* petition within 60 days of receiving [the] initial affidavit that instigated [his] discovery of all of [his] claims." *Id.* at 891. In so holding, we noted that while trial transcripts containing evidence of a witness' perjurious statements against the petitioner constituted information within the public domain, the petitioner nevertheless acted with due diligence under the circumstances since neither the witness nor the transcripts could be found. *Id.* In addition, focusing exclusively on the petitioner's trial in *Davis,* the petitioner had no reason to know of enticements bestowed upon the witness by the Commonwealth. These facts distinguish *Davis* in that there can be no dispute in the present case that Appellant knew of Goodwine's role and acquittal in the murder as early as 1993. Moreover, Goodwine's expungement motion was, in fact, available on a public court docket, as evidenced by its recovery through the efforts of the Pennsylvania Innocence Project. Hence *Davis,* like *Medina,* does not support relief.[9]

For each of the foregoing reasons, I would hold that Appellant's second petition is untimely on its face and that he failed to plead and prove a statutory exception to the PCRA's jurisdictional time-bar. Therefore, in my view, the PCRA court

---

**8.** "Under the Double Jeopardy Clauses of both the United States and Pennsylvania Constitutions, as well as under Pennsylvania Crimes Code, a second prosecution for the same offense after acquittal is prohibited." *Commonwealth v. DeLong,* 879 A.2d 234, 238 (Pa.Super.2005), *appeal denied,* 586 Pa. 707, 889 A.2d 1213 (2005).

**9.** The Majority also cites *Commonwealth v. Bennett,* 593 Pa. 382, 930 A.2d 1264 (2007) to support its contention that Appellant is entitled to relief. *Bennett,* however, never involved an express holding that petitioners are entitled to special, access-based accommodations where they lack the benefit of counsel. Instead, the Supreme Court concluded that

correctly determined that it lacked jurisdiction to consider Appellant's substantive claims. Accordingly, I dissent.

President Judge GANTMAN and Judge SHOGAN join this dissenting opinion.

an order dismissing the petitioner's first PCRA appeal was only a public record in the broadest sense because such orders are not sent directly to the prisoner but only to counsel on the assumption that counsel will inform his client of the court's action. The Court then noted that the logic of this assumption breaks down where counsel abandons his client. Thus, the Court declined to treat the order as a public record where the prisoner's only means of access to the information was restricted by counsel's abandonment. *Id.* at 1266.

That is not the situation before us. Here, Goodwines' expungement motion resided on a public trial court docket, available to all who sought it. A third party, the Pennsylvania Innocence Project, recovered the document and transmitted it to Appellant. Appellant has offered no explanation for why he could not obtain Goodwines' expungement

papers as the Pennsylvania Innocence Project did. Hence, the concern that confronted our Supreme Court in *Bennett* is simply not present here. Appellant, unlike Bennett, acted *pro se* from the initiation of the instant proceedings and, thus, never had any expectation of counsel's assistance. While the rule in *Bennett* might apply in cases where counsel's unanticipated abandonment defeats a petitioner's legitimate expectations, it has no application where the petitioner initiates the proceedings *pro se* and expects to continue in that capacity.

The Majority's approach effectively allows Appellant to transfer **his** duty of due diligence under the PCRA to a third party and, in turn, to rely on the results of the third party's efforts long after applicable deadlines have passed. I believe that such an approach is entirely inconsistent with prevailing interpretations of the PCRA's timeliness requirements.